IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JERRY L. BISBY | § | |
|    TDCJ-CID #654038 | § | |
| v. | § | C.A. NO. C-07-404 |
| | § | |
| SGT. KIMBERLY GARZA, ET AL. | § | |

**ORDER REGARDING PLAINTIFF'S
MOTION FOR PRODUCTION OF DOCUMENTS**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending are plaintiff's motion for production of documents, (D.E. 88), and defendant Warden Oscar Mendoza's motion for protective order. (D.E. 94). For the reasons below, both motions are DENIED.

**I. PROCEDURAL HISTORY**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID") and is currently incarcerated at the McConnell Unit in Beeville, Texas. On July 4, 2007, he slipped and fell in water that had collected in his McConnell Unit cell. Plaintiff filed three separate lawsuits arising from this slip and fall event: 2:07cv404; 2:07cv423; and 2:07cv424. The Court consolidated the three cases into case number 2:07cv404 pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, because they involve common questions of law and fact, and their joint administration is more efficient. (D.E. 11).

On October 9, 2007, plaintiff filed the instant action, 2:07cv404, against Sergeant Kimberly Garza, alleging that she was deliberately indifferent to his serious medical needs because she denied him medical care and threatened him with pepper spray following his fall. (D.E. 1, at 1-2). On November 2, 2007, plaintiff filed a second lawsuit, 2:07cv423, against American Correction Association ("ACA"). (See 2:07cv423 at D.E. 1). In this lawsuit, he

claims that ACA, which is allegedly responsible for "prison accreditation," failed to properly inspect the McConnell Unit for safety and environmental hazards. Id. at 3-4.

On November 2, 2007, plaintiff filed his third action, 2:07cv424, in which he named Warden Oscar Mendoza as the defendant. (See 2:07cv424 at D.E. 1). He claims that he had personally advised Warden Mendoza on numerous occasions about the water leak in his cell and had asked to be moved to another cell, but that Warden Mendoza failed to take any action to remedy the situation, in deliberate indifference to his serious medical needs. Id. at 4.

In his three actions, plaintiff seeks $100,000 in compensatory damages, punitive damages, and injunctive relief in the form of repairs to his cell and mold removal.

On May 8, 2008, defendants Garza and Mendoza filed a motion for summary judgment on the grounds of qualified immunity and failure to exhaust administrative remedies. (D.E. 87). On May 13, 2008, defendant ACA filed a motion to dismiss on the grounds that it did not act under color of state law, that plaintiff failed to allege a conspiracy, and that its officers are protected under the Volunteer Protection Act, 42 U.S.C. § 1450 et seq., and its Texas counterpart. (D.E. 89, at 1-2).

On May 12, 2008, plaintiff filed the pending motion for production of documents. (D.E. 88). On May 14, 2008, a hearing was set for May 23, 2008. (D.E. 92). On May 16, 2008, defendants Garza and Mendoza filed a response in opposition to plaintiff's motion, and additionally moved for a protective order on the grounds of qualified immunity. (D.E. 94).

## II.  PLAINTIFF'S MOTION

In the pending motion, plaintiff explained that he requested from defendants Garza and Mendoza: (1) documents pertaining to inspection sheets; (2) any documents signed by prison

officials or ACA inspectors or employees after January 2003; and (3) any documents pertaining to roof or window leaks in any part of the McConnell Unit that the ACA recommended be repaired. (D.E. 88, at 1). He claimed these documents are necessary to establish that the ACA allowed the TDCJ to pass inspections in spite of unsafe conditions. Id.

At the hearing on May 23, 2008, plaintiff clarified that, in addition to the other documents, he sought work orders for leak-related repairs to all McConnell Unit facilities. He also made an oral motion for production of a surveillance videotape allegedly documenting a pepper spray attack by Sergeant Garza on July 4, 2007. Finally, he requested documents from a lawsuit filed by another prisoner in July 2004.

Plaintiff asserted that the inspection sheets prove a conspiracy between ACA and prison officials to accredit the McConnell Unit despite its substandard facilities and environmental hazards. He explained that regulations require McConnell Unit officials to document all repairs for ACA review. He argued that he needs records for the entire McConnell Unit to determine who is responsible for allowing conditions to deteriorate.

Defendants Garza and Mendoza argued that the requests are overly broad, vague, and unduly burdensome. (D.E. 94, at 2). They also moved for a protective order, claiming that qualified immunity protects them from the burden of responding. Id. at 2-3.

At the hearing, counsel for defendants Garza and Mendoza was unsure whether the various documents exist, or who has control of them. She argued that the documents were not discoverable because defendants were entitled to qualified immunity.

Counsel for defendant ACA suggested that no discovery against ACA occur until the Court resolves all legal issues relevant to her client's amenability to suit. She explained that her

client did not have the inspection reports, and doubted that it had the work orders, or the video.

### III.  DISCUSSION

**A.    Plaintiff Must Comply With The Federal Rules Of Civil Procedure To Obtain Discovery.**

In an earlier order, (D.E. 55), the Court explained that, although he proceeds pro se, defendant is required to comply with the applicable Federal Rules of Civil Procedure. See id. at 3; accord (D.E. 64, at 4).  Before any discovery order will issue, plaintiff must invoke the appropriate discovery rule, adhere to its procedural requirements, and be able to show that he has done so.

At the hearing, plaintiff requested a videotape that allegedly shows Sergeant Garza using pepper spray on him.  His discovery request mentioned no such tape. (D.E. 88, Ex. A); see also Fed. R. Civ. P. 34(b)(1)(A) (discovery requests must describe each item or category of items to be produced).  Accordingly, plaintiff's oral motion for production of the videotape is DENIED without prejudice.

Similarly, plaintiff has not served defendant ACA with any discovery request.  See Fed. R. Civ. P. 34(a) (litigants obtain documents by serving a discovery request).  Plaintiff may obtain discovery from ACA by serving it with a request consistent with the Federal Rules of Civil Procedure.  Accordingly, plaintiff's motion is DENIED with respect to defendant ACA.

Finally, as explained at the hearing, plaintiff will have to obtain documents filed in earlier suits from the Clerk of the Court.  (D.E. 99).  His oral motion for production of these documents is DENIED.

**B.      Defendant Garza and Mendoza's Motion for Protective Order.**

Defendants Garza and Mendoza assert qualified immunity as a defense to plaintiff's discovery request. Qualified immunity provides officials "not just immunity from liability, but immunity from suit," including discovery. Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996) (citations omitted). Indeed, the Fifth Circuit has explained that "[e]ven limited discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense qualified immunity.'" Id. at 1368-69 (citing Wicks v. Mississippi State Employment Serv., 41 F.3d 991, 994 & n.10 (5th Cir. 1995) (emphasis in original)).

The threshold question in a qualified immunity analysis is "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)); accord Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established–that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mace, 333 F.3d at 624 (quoting Price, 256 F.3d at 369). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

     **1.      Step One:  Constitutional Violation.**

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation omitted). Conditions that result in "unquestioned and serious deprivations of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prison official violates this duty when by act or omission the official is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. Farmer, 511 U.S. at 834.

Deliberate indifference is more than mere negligence. Id. at 835. The Fifth Circuit has explained that "[t]o establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998); see also Farmer, 511 U.S. at 837 (holding that the subjective test for deliberate indifference requires the official both know of and disregard an excessive risk of harm). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Bradley, 157 F.3d at 1025 (citation omitted).

Plaintiff alleges that he was moved to the leaky cell in April 2007. He mopped the floor every time it rained, but it was still extremely slippery. According to him, McConnell Unit cells are configured as such that he could have hit his head on a metal table, stool, or his bunk, resulting in severe injuries. He further alleges that in May 2007 he complained directly to Warden Mendoza that his cell leaked every time it rained. He told Warden Mendoza that he had almost fallen several times, and that several other inmates in leaky cells had slipped. He also

filed four I-60 requests, directed to him personally, requesting he be moved to a safer cell. Although Warden Mendoza could have moved him to one of several empty cells that did not leak, he did not.

These allegations establish that he faced a risk of harm that could have been easily eliminated, and that Warden Mendoza did nothing to abate it in spite of his awareness of the risk. He has therefore alleged facts sufficient to establish an Eighth Amendment violation.

### 2. Step Two: Objective Reasonableness.

Step two of the qualified immunity analysis requires courts to determine whether the defendant's conduct "was objectively reasonable in light of clearly established law." Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). "Fair warning" is the central concept in this analysis. Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008) (citations omitted). The Fifth Circuit has explained that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on..., so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." Thompson, 245 F.3d at 457 (citation omitted).

At all relevant times, plaintiff had a clearly established constitutional right to reasonably safe housing and adequate shelter. Farmer, 511 U.S. at 832. Moreover, the Fifth Circuit has specifically held that leaking roofs can deprive prisoners of minimally safe housing. See Cotton

v. Taylor, 176 F.3d 479, 1999 WL 155652, at *4 (5th Cir. Mar. 9, 1999) (per curiam) (unpublished).

Thus, defendant Mendoza was on notice that he could not act with deliberate indifference to the leaky, slippery conditions in plaintiff's cell. Accordingly, defendant Mendoza's motion for a protective order on qualified immunity grounds is DENIED.[1]

**C.   Plaintiff's Motion to Compel the Production of Documents.**

The Federal Rules of Civil Procedure allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). They also limit a court's discretion to allow discovery, however. Courts are to prevent discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). The Rule 26 also directs courts to limit discovery when it is more burdensome than beneficial. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (enumerating factors to consider in weighing benefit and burden).

    **1.   Much of Plaintiff's Discovery Request is Overly Broad.**

Plaintiff seeks all documents signed by McConnell Unit officials and ACA employees after January 2003. If granted, this request would require defendants to produce many documents that are neither relevant nor reasonably calculated to lead to admissible evidence. On the other hand, requiring defendants to produce five years worth of documents signed in the ordinary course of business would be burdensome and expensive. Because the burden imposed on defendants would greatly exceed the benefit to plaintiff, the Court may not grant such a broad request. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (court must limit discovery where burden of

---

[1] The discovery sought is not relevant to his claims that defendant Garza failed to provide medical treatment.

proposed discovery outweighs likely benefit); see also Helen of Troy Ltd. v. John Paul Mitchell Sys., Inc., No. 05-CA-365-FM, 2007 WL 1858819, at *6 (W.D. Tex. June 26, 2007) (unpublished) (denying similar request where their "unlimited nature" rendered them unduly burdensome). Accordingly, plaintiff's request is DENIED insofar as it is overly broad.

### 2.  Some of the Discovery Sought is Relevant.

The remainder of plaintiff's discovery request seeks information relevant to his claims, and to the issue of qualified immunity. While only the conditions in plaintiff's cell are directly relevant to his lawsuit, leaky conditions in other areas of the McConnell Unit would tend to prove that the buildings were in generally poor repair. This fact might be considered evidence of both the conditions in plaintiff's cell and of the defendants' knowledge of them. See Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). Thus, work orders showing that leak-related repairs were requested and performed, inspection sheets recommending repairs, and other documents related to leaks could be relevant to conditions at McConnell Unit, whether officials were aware of them, and whether they actually concluded that conditions were below constitutional standard. See Gates v. Cook, 376 F.3d 323, 333 (knowledge of risk is question of fact that may be proved by circumstantial evidence; factfinder may infer knowledge from fact that risk was obvious) (citing Farmer, 511 U.S. at 842).

### 3.  Producing the Relevant Discovery would be More Burdensome than Beneficial.

Plaintiff's suit will be dismissed if defendants' motion for summary judgment is granted. Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary

judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).

Courts do not weigh evidence, or make credibility determinations on a motion for summary judgment.  Harvill v. Westward Comm., L.L.C., 433 F.3d 428, 436 (5th Cir. 2005) (citing Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (purpose of summary judgment is "'to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues'") (quoting Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888 (1990)).  Courts must evaluate the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan, 497 U.S. at 888.

Plaintiff has other means to respond to defendants' motion for summary judgment.  Rule 56(e)(1) of the Federal Rules of Civil Procedure describes how litigants may submit affidavits in

response to a summary judgment motion. Moreover, allegations made under penalty of perjury in a verified complaint are also competent summary judgment evidence where "made on personal knowledge, set forth facts ... admissible in evidence, and show affirmatively that (the) affiant is competent to testify to the matters stated therein." Barker v. Norman, 651 F.2d 1107, 1114-15 (5th Cir. Unit A July 1981) (quoting Fed. R. Civ. P. 56(e)); see also Hernandez v. Velasquez, 522 F.3d 556, 561 (5th Cir. 2008) (per curiam) (citing King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)).

Plaintiff may thus fulfill his obligation to produce evidence without obtaining discovery from defendant. Indeed, as this Court may not weigh the evidence or make a credibility determination at the summary judgment stage, the documents he seeks are equivalent to his own verified pleadings, and to any affidavits he should choose to file. Moreover, plaintiff has alleged that prison officials and ACA employees conspired to falsify the requested documents. (D.E. 88, at 1). It is therefore not reasonable to expect that they usefully establish conditions at the McConnell Unit. Accordingly, his discovery request is DENIED.

## IV.  CONCLUSION

Based on the foregoing reasons, plaintiff's motion for production of documents, (D.E. 88), is DENIED. Defendants' motion for protective order, (D.E. 94), is also DENIED.

ORDERED this 10th day of June 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE