IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JERRY L. BISBY                          §
    TDCJ-CID #654038                §
                                    §
v.                                      §          C.A. NO. C-07-404
                                    §      (Consolidated with C-07-423
                                    §          and C-07-424)
SGT. KIMBERLY GARZA, ET AL.  §

## MEMORANDUM AND RECOMMENDATION ON DEFENDANT AMERICAN CORRECTIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at the McConnell Unit in Beeville, Texas.

Pending is the motion of defendant American Correctional Association to dismiss plaintiff's claims against it, its officers, and employees, (collectively referred to herein as "ACA"), because they are not state actors for purposes of 42 U.S.C. § 1983. (D.E. 89). For the reasons stated herein, it is respectfully recommended that the Court grant ACA's motion.

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit, was incarcerated at the McConnell Unit in Beeville, Texas.  On July 4, 2007, plaintiff slipped and fell in water that had collected in his McConnell Unit cell.  Plaintiff filed three separate lawsuits arising from the slip and fall event: 2:07cv404; 2:07cv423; and 2:07cv424.

On October 9, 2007, plaintiff filed the instant action, 2:07cv404, against Sergeant Kimberly Garza, alleging that she was deliberately indifferent to his serious medical needs because she denied him medical care and threatened him with pepper spray following his fall.  (D.E. 1 at 1-2).  On November 2, 2007, plaintiff filed a second lawsuit, 2:07cv423, against ACA.  (See 2:07cv423 at D.E. 1).  Plaintiff claims that ACA violated his constitutional rights when it failed to inspect properly the McConnell Unit for safety and environmental hazards, and "accredited" the McConnell Unit despite its having numerous safety and human rights violations.  (Id. at 3-4).  Also on November 2, 2007, plaintiff filed the third action, 2:07cv424, in which he named Warden Oscar Mendoza as a defendant. (See 2:07cv424 at D.E. 1).  Plaintiff claims that he had personally advised Warden Mendoza on numerous occasions about the water leak in his cell and had asked to

2

be moved to another cell, but that Warden Mendoza failed to take any action to remedy the situation, in deliberate indifference to his serious medical needs.  Id. at 4.

By order entered November 21, 2007, the Court consolidated the three cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, because they involve common questions of law and fact, and their joint administration is more efficient.  (See D.E. 11).

Following a November 15, 2007 Spears[1] hearing, it was recommended that plaintiff's claims against defendants Sergeant Garza and Warden Mendoza be retained.  (D.E. 12).  On March 10, 2008, the Court adopted the recommendation as to defendants Garza and Mendoza, and also ordered that plaintiff's claims against ACA go forward.  (D.E. 67).  On March 24, 2008, service was ordered on ACA by and through its officers of record.  (D.E. 70); see also Fed. R. Civ. P. 4(h). On April 21, 2008, ACA filed its corporate disclosure statement advising that it has no parents, subsidiaries or affiliates, as well as no shareholders.  (D.E. 78).

On May 13, 2008, ACA filed the pending motion to dismiss, (D.E. 89), and memorandum in support.  (D.E. 90).  On May 13, 2008, an order was issued construing the motion to dismiss as a motion for summary judgment and plaintiff

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

was advised that he had until June 12, 2008 to respond with any evidence in opposition.  (D.E. 91).  On June 11, 2008, plaintiff filed a response in opposition to ACA's motion.  (D.E. 101).  On June 16, 2008, ACA filed a reply brief.  (D.E. 102).

### III.  SUMMARY JUDGMENT EVIDENCE

In its motion to dismiss, ACA refers to matters outside the pleadings, including the affidavit of ACA's Deputy Executive Director, Jeffery Washington, who is responsible for the day-to-day operation of ACA and its programs.  (D.E. 89, Ex. A) ("Washington Aff.").  Because the motion to dismiss refers to matters outside the pleadings, it is respectfully recommended that it be construed as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(b)(6).

The summary judgment evidence establishes the following regarding ACA:

(1)  ACA is a private, not-for-profit corporation organized under the laws of the State of New York.  Washington Aff. at ¶ 3.  ACA's offices are located in Alexandria, Virginia.  Id.  ACA is exempt from federal income taxes.  Id.

(2) ACA offers a voluntary certification program to federal, state, and local correctional facilities.  Id. at ¶ 5.  To be accredited by ACA, the correctional

facility must demonstrate compliance with certain standards adopted by ACA. Accreditation is good for a 3-year period following the audit.  Id.

(3) ACA has no authority to require a correctional facility to seek accreditation.  Id. at ¶ 6.

(4) No governmental entity requires ACA to operate its accreditation program.  Id. at ¶ 7.  No federal grants or other monies are used to fund ACA's accreditation program.  Id. at 8.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence,

or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no

reasonable juror could find for the nonmovant, summary judgment will be granted." <u>Caboni</u>, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." <u>Anderson</u>, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248.

## V.  DISCUSSION

The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (per curiam) (citations); <u>accord</u> <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). "[M]ere [] private conduct, no matter how discriminatory or wrongful" will not give rise to liability pursuant to § 1983. <u>Cornish v. Corr. Servs. Corp.</u>, 402 F.2d 545, 549 (5th Cir. 2005) (citations omitted). The Supreme Court has held that the alleged conduct causing the deprivation of a federal right must be

7

"fairly attributable to the State."  <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937

(1982).  The Court set forth a two-part analysis for the "fair attribution" test:

> First, the deprivation must be caused by the exercise of
> some right or privilege created by the State or by a rule
> of conduct imposed by the state or by a person for whom
> the State is responsible....  Second, <u>the party charged with
> the deprivation must be a person who may fairly be said
> to be a state actor.</u>  This may be because he is a state
> official, because he has acted together with or has
> obtained significant aid from state officials, or because
> his conduct is otherwise chargeable to the State.

<u>Id.</u> (emphasis added); <u>accord</u> <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 241-42 (5th

Cir. 1999); <u>see also</u> <u>Flagg Bros. v. Brooks</u>, 436 U.S. 149, 155 (1978).

The Fifth Circuit has recognized three tests to determine whether a private

party is acting under color of state law: the public function test, the state

compulsion test, and the joint action or nexus test.  <u>Bass</u>, 180 F.3d at 241-42.

Under the public function test, a "private entity may be deemed a state actor when

that entity performs a function which is traditionally the exclusive province of the

state."  <u>Id.</u> at 242 (internal quotations and citation omitted).

In this case, as set forth in the uncontradicted affidavit of Jeffery

Washington, the establishment and operation of ACA's voluntary accreditation

program is not a function reserved exclusively to the State.  No governmental

entity "either requires that ACA operate its accreditation program or regulates such

accreditation program." (Washington Aff. at ¶ 7). Thus, it is respectfully

recommended that neither ACA nor its inspectors that visited the McConnell Unit,

nor its officers or agents can be deemed state actors under the public function test.

Under the state compulsion test, "a State normally can be held responsible

for a private decision only when it has exercised coercive power or has provided

such significant encouragement, either overt or covert, that the choice must in law

be deemed to be that of the State." Bass, 180 F.3d at 242 (quoting Blum v.

Yaretsky, 457 U.S. 991, 1004 (1982)). The state prison facilities have not

exercised any coercive power over ACA or its employees because the ACA

accreditation program is completely voluntary, and the State has no control or

power over the ACA. (Washington Aff. at ¶ 6, ¶ 9). Likewise, "the ACA has no

authority to require a correctional facility to seek accreditation, to adopt any

procedures or to change any existing procedures." Id. at ¶ 6. Thus, it is

respectfully recommended that the ACA and its officers and agents are not deemed

state actors under the state compulsion test.

Finally, under the nexus or joint action test, a private party may be deemed a

state actor where the state has "so far insinuated itself into a position of

interdependence with the [private actor] that it was a joint participant in the

enterprise." Bass, 180 F.3d at 242 (quoting Jackson v. Metropolitan Edison Co.,

419 U.S. 345, 357-58 (1974)).  The ACA is a private, nonprofit, nongovernmental, educational organization.  Washington Aff. at ¶¶ 3, 7.  As previously noted, a state facility's decision to apply for accreditation through the ACA is completely voluntary, and the ACA cannot force the facilities to adopt or change any procedures because they are not in compliance with the ACA standards.  Id. at ¶ 6.  A mere contractual relationship between a private entity and a state does not render the private entity a state actor.  Cornish, 402 F.2d at 549 ("[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts") (internal quotations and citation omitted); see also National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 194 (1988) ("Neither [the university's] decision to adopt the NCAA's standards nor its minor role in their formulation is a sufficient reason for concluding that the NCAA was acting under color of Nevada law when it promulgated standards governing athlete recruitment, eligibility, and academic performance").  Therefore, the fact that the TDCJ-CID may have a contractual relationship with ACA to inspect its prisons does not render ACA a state actor.  Accordingly, it is respectfully recommended that ACA and its agents are not deemed to be state actors under the joint action or nexus test.

In his opposition, plaintiff argues that his "claims of 'conspiracy' can be proven by examining 'inspection papers' that were used and 'signed' by 'ACA' inspectors/employees."  (D.E. 101, at 1).  He asserts that such evidence is available in Weber v. Stevens, et al., C-04-378 (S.D. Tex.).  Id.  However, there are no records in that action from ACA.  Moreover, there are no records that support plaintiff's allegations of a conspiracy by ACA.

Plaintiff cites Guarneri v. West, 518 F. Supp.2d 514 (W.D.N.Y. 2007) for the proposition that "a pro se complaint must be liberally construed ... and held to less stringent standards than formal pleadings drafted by lawyers."  (D.E. 101, at 4) (quoting Guarneri, 518 F. Supp.2d at 517).  Such language does not correctly characterize the law regarding summary judgments.  Plaintiff can no longer rest on the allegations in his complaint (or those that he reiterates in his opposition). Anderson, 477 U.S. at 248.

Plaintiff does not provide much case law to support his claim of a conspiracy.  Moreover, he has provided no factual support beyond unsubstantiated allegations that ACA has engaged in a conspiracy to deprive him of constitutional rights.  He attached as an exhibit to his opposition a notice from ACA soliciting

information from individuals regarding the McConnell Unit.  (D.E. 101, at 6).[2]

This notice, however, does not establish any conspiracy, but merely that the ACA

was going to audit the McConnell Unit and would consider any relevant

information provided.

Indeed, the <u>Guarneri</u> court found that the plaintiff's allegations against

prison supervisors were sufficient for purposes of the defendant's motion to

dismiss, but acknowledged that the prison supervisors may be entitled to summary

judgment if the plaintiff did not provide evidence to substantiate the allegations.

518 F. Supp.2d at 519.  Here, plaintiff has failed to establish any evidence of

personal involvement by ACA to engage in a conspiracy to deprive him of his civil

rights.  <u>See</u> <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal

involvement is an essential element of a civil rights cause of action.") (citation

omitted).  The only personal involvement by ACA is the inspections, but there is

no evidence of any conspiracy.

Under all three tests recognized by the Fifth Circuit, neither ACA nor its

employees or agents are state actors.  Accordingly, the conduct of ACA and its

agents in the alleged failure to inspect properly the McConnell Unit are not "fairly

---

[2] Plaintiff alludes to prison officials willing to provide testimony, (D.E. 101, at 4), but does not provide any affidavits.

attributable to the State." As such, it is respectfully recommended that ACA is not a proper defendant pursuant to § 1983.

## VI.  RECOMMENDATION

Based upon the foregoing, it is respectfully recommended that defendant ACA's dispositive motion, (D.E. 89), be granted, and that plaintiff's § 1983 claims against ACA be dismissed with prejudice.

Respectfully submitted this 21st day of June 2008.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within TEN (10) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 (1996) (en banc).